# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENWOOD DIVISION

| | |
|---|---|
| Cephus B. Glenn,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AshTech Corporation,<br><br>　　　　　Defendant. | C/A NO.: 8:16-cv-03473-MGL<br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff Cephus B. Glenn complaining of Defendant AshTech Corporation (AshTech), would respectfully allege and show unto the Court as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

2. The Court has personal jurisdiction over the Defendant because Defendant regularly transacts business in this District.

3. Venue is appropriate in the Greenwood Division of the District Court of South Carolina pursuant to 28 U.S.C. § 1391 and pursuant to Local Civil Rule 3.01 (D.S.C.) because a substantial part of the events or omissions giving rise to the claim occurred in the Greenwood Division of the District Court of South Carolina.

## PARTIES

4. Plaintiff Cephus B. Glenn is a resident of Newberry County and a citizen of the State of South Carolina.

5.     Defendant AshTech Corporation is a corporation organized and existing under the laws of the State of Ohio. Upon information and belief, AshTech's principle place of business is the State of Ohio.

## FACTUAL ALLEGATIONS

6.     Sometime prior to August 2016, Norbord Inc. (Norbord), an international producer of wood-based panels, purchased a Submerged Bottom Ash Handling System (hereinafter, "Ash Handler") from Defendant AshTech.

7.     The Ash Handler was marketed, sold, designed, and manufactured by AshTech.

8.     The function of the Ash Handler system is to quench hot ash produced from burning tree bark and wood chips in a large furnace and to collect the ash in a nearby bin so that it may be removed. The system consists of a large, water filled tank with a submerged conveyor belt in the bottom. Ash from the furnace travels through a large chute to the surface of the water in the Ash Handler's tank. As the ash becomes waterlogged, it sinks to the bottom of the tank and is transported to a collection bin by the submerged conveyor belt.

9.     At the time of the incident giving rise to this action, the Ash Handler's water tank did not have a lid or top to enclose the water inside the tank. The mouth of the ash chute from the furnace was submerged below the water surface to prevent the hot ash from escaping into the air, but the remainder of the water tank was exposed.

10.    When the Ash Handler is operational, the water in the tank is as hot as 160 degrees Fahrenheit—sufficiently hot to cause significant and permanent burn injuries to an individual exposed to the hot liquid. The Ash Handler tank contains no safety devices, such as guard rails, splash guards, or otherwise, which would protect a user in the event of an overflow. The tank contains no warning signage or indicators regarding the safety hazards presented by the scalding

liquid inside the tank.

11. The Ash Handler was installed in a Norbord facility in Lanett, Alabama in late 2006. The Ash Handler was subsequently moved from the Alabama plant to an identical plant in Kinards, South Carolina to be used in the exact same location of the facility, for the exact same purpose.

12. When the Ash Handler was installed in South Carolina, it was installed pursuant to the specification provided by AshTech, and was in the same condition as it was when it left AshTech's hands.

13. Following installation of the Ash Handler in South Carolina, AshTech service representatives traveled to South Carolina to inspect the site and Ash Handler. The AshTech representatives determined that the Ash Handler was properly installed.

14. AshTech regularly sold products, including parts and supplies, to the Norbord facility in Kinards, South Carolina, and continues to sell products in South Carolina.

15. On August 4, 2016, Plaintiff Glenn was working in the Norbord facility in Kinards, South Carolina, washing debris from the area near the Ash Handler with a hose. At the same time that Plaintiff was working next to the Ash Handler, a large mass of debris suddenly fell out of the furnace, into the Ash Handler's water tank. The mass of debris displaced the scalding water in the tank, causing it to spill out of the tank directly over Plaintiff.

16. Plaintiff was unaware of the hazards presented by the Ash Handler tank, and without any warning was completely engulfed in 160-degree water. The scalding liquid caused Plaintiff to suffer third degree burns over 90% of his body, requiring extensive medical treatment and leaving Plaintiff with permanent, severe injuries.

17. Shortly after the incident in which Plaintiff was burned as a result of the exposed

water tank, Norbord personnel contacted Defendant seeking a design solution to make the Ash Handler safe for use and ensure that a similar incident does not happen again.

18. Defendant's response was to instruct Norbord on how to build and install an enclosure for the tank. Notably, AshTech engineers did not visit the site on this occasion, as the Ash Handler could be made safe by simply providing instructions for construction of a lid for the tank—a simple feature which would have prevented Plaintiff's injuries if it had been included in AshTech's original design.

19. As a direct and proximate result of the negligence and reckless conduct of Defendant, Plaintiff has suffered intense pain, permanent impairment, loss of enjoyment of life, mental anguish, emotional distress, medical and hospital bills, and will continue to suffer these injuries and damages. Further, as a result of this incident Plaintiff has lost earnings from his employment and will continue to lose wages and suffer a loss of earning and work capacity.

## FOR A FIRST CAUSE OF ACTION
### (Negligence)

20. The Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if set forth herein.

21. At all material times, Defendant had a duty to exercise reasonable care in all aspects of the testing, marketing, manufacture, advertising, sale, design, and provision of adequate warnings regarding the Ash Handler.

22. Defendant failed to exercise ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, distribution, and placement of warnings prior to distribution of this product in interstate commerce and Defendant knew or should have known that this product created a high risk of dangerous conditions which could cause great injury or death.

23. Defendant was negligent in the design, manufacture, testing, advertising, warning,

marketing and sale of the Ash Handler in the following ways:

    a. Failing to use due care in the design and manufacture of the Ash Handler so as to avoid risk to the Plaintiff when the product was being used as directed by the manufacturer or during conduct which was foreseeable and intended in the ordinary course of the product's use;

    b. failing to accompany the said product with proper warnings regarding all possible dangers associated with the use of said product;

    c. failing to provide adequate warnings and/or instructions to the Plaintiff and users of the Ash Handler;

    d. failing to warn and/or adequately warn Plaintiff or the public prior to using the Ash Handler orally or in writing about the possibility of being burned by scalding liquid while standing near the Ash Handler;

    e. improperly designing the Ash Handler;

    f. failing to adequately test or warn about the possible dangers caused by the use of the Ash Handler; and

    g. in such other and further ways to be determined through discovery.

24. Defendant marketed and sold the Ash Handler despite the fact that Defendant knew or should have known that the product caused unreasonable, dangerous, and deadly situations and possibilities which many users would be unable to foresee and/or prevent.

25. Defendant knew or should have known that consumers and users such as Plaintiff would suffer foreseeable injuries as a result of Defendant's failure to exercise ordinary care as described above.

26. At all material times, Defendant knew of the defective nature of its product as set

5

forth herein, and continued to design, manufacture, market, sell, resell, and advertise their product so as to maximize sales and profits at the expense of public health and safety, and as such defendant's conduct exhibits a wanton and reckless disregard for human life.

27.     Upon information and belief, Defendant exhibited such an entire want of care as to establish that its actions were a result of gross negligence, carelessness, recklessness, willful and wanton conduct, and a conscious disregard of foreseeable harm to the Plaintiff herein, thereby entitling Plaintiff to punitive damages.

28.     As a direct and proximate result of Defendant's negligence, Plaintiff suffered and will continue to suffer injury, harm, damages, and economic loss.

### FOR A SECOND CAUSE OF ACTION
**(Strict Liability)**

29.     Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if fully set forth herein.

30.     At all times relevant hereto, Defendant was engaged in the business of promoting, manufacturing, marketing, distributing, designing, and selling industrial equipment, including the Ash Handler.

31.     Defendant had a duty to design, test, manufacture, assemble, and inspect its products so as to not subject purchasers and/or users to an unreasonable risk of harm through a product which was in a defective and unreasonably dangerous condition.

32.     The Ash Handler which injured Plaintiff was sold, marketed, and placed in the stream of commerce by Defendant and was defective and unsafe for its intended purpose at the time it left the control of Defendant.

33.     The Ash Handler which injured Plaintiff was in substantially the same condition on the day of Plaintiff's injury as when it was manufactured and sold.

34. Defendant promoted, manufactured, marketed, distributed, designed, and sold the Ash Handler in a defective and unreasonably dangerous condition, including, but not limited to, provision of inadequate warnings and/or instructions and inadequate, faulty, or defective design.

35. Safer alternative designs existed at the time the Ash Handler was manufactured, such as a design which would have incorporated a tank enclosure similar to the design Defendant provided Norbord following the incident.

36. The injuries and damages suffered by Plaintiff were directly and proximately caused by the defective and unreasonably dangerous condition of the Ash Handler in violation of S.C. Code § 15-73-10.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Express Warranty of Merchantability)

37. Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if fully set forth herein.

38. Defendant expressly warranted the Ash Handler for safe use.

39. Defendant's warranty extends to Plaintiff as a natural person expected to use or be affected by the Ash Handler.

40. The Ash Handler does not conform to these express representations because it is not safe and has life-threatening possibilities and/or consequences. As a direct and proximate result of the breach of said express warranties, Plaintiff has suffered and will continue to suffer damages as alleged herein.

41. As a direct and proximate result of the breach of the express warranty of merchantability by the Defendant, Plaintiff suffered and will continue to suffer damages, injury, harm, and economic loss as alleged herein.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Implied Warranties)

42. Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if fully set forth herein.

43. Defendant impliedly warranted prospective purchasers and users, including Plaintiff, that the Ash Handler was safe, merchantable, and fit for the ordinary purposes for which such goods are used.

44. Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the Ash Handler was of merchantable quality and safe and fit for its intended use.

45. The Ash Handler was not of merchantable quality or safe or fit for its intended use because the product was defective and unreasonably dangerous.

46. As a direct and proximate result of the breach of implied warranties by Defendant, Plaintiff suffered and will continue to suffer the damages, injury, harm, and economic loss as alleged herein above.

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all claims so triable.

## PRAYER

WHEREFORE, Plaintiff prays for:

a. Judgment against the Defendant on all claims set forth herein;

b. an award of actual and consequential damages from the Defendant in an amount to be determined by the jury and sufficient to compensate Plaintiff for the damages he has incurred;

 c. and award of punitive damages in an amount to be determined by the jury and sufficient to impress upon the Defendant the seriousness of its conduct and to deter similar conduct in the future;

 d. an award of attorneys' fees and costs in an amount to be determined by the Court; and

 e. such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ Richard A. Harpootlian_____
Richard A. Harpootlian (Fed ID No. 1730)
Christopher P. Kenney (Fed ID No. 11314)
W. Baker Allen (Fed ID No. 11361)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, South Carolina 29202
Phone (803) 252-4848
Facsimile (803) 252-4810
rah@harpootlianlaw.com
cpk@harpootlianlaw.com
wba@harpootlianlaw.com

ATTORNEYS FOR PLAINTIFF

October 24, 2016
Columbia, South Carolina.